UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                    Case No. 09-11008-WRS
                                                         Chapter 7
SGV LLC,

    Debtor

WILLIAM C. CARN III,

    Plaintiff                                       Adv. Pro. No. 09-1065-WRS

v.

J. R. HOSSLER & CO., INC. , et al,

    Defendants

## MEMORANDUM DECISION

This Adversary Proceeding is before the Court upon the Motion for Summary Judgment filed by Plaintiff William C. Carn, III, the Chapter 7 Trustee. The parties have filed briefs. (Docs. 22, 23, 24, 25). The Court heard the argument of counsel at a hearing held April 13, 2010. For the reasons set forth below, the motion is GRANTED and judgment is entered in favor of the Trustee.

## I. Facts

On May 27, 2009, SGV, LLC, filed a petition in bankruptcy pursuant to Chapter 7 of the Bankruptcy Code, initiating Case No. 09-11008. As of the date of the petition, SGV owned a mobile home park in Anderson, Indiana. SGV had purchased the property from Defendant J.R. Hossler and Co., Inc., d/b/a Southgate Homes. SGV purchased the mobile home park from

Hossler pursuant to a series of transactions which took place in October of 2005. In general terms, the property consisted of three things: (1) the real property comprising the mobile home park; (2) 21 mobile homes, and (3) 16 contracts into which Hossler had entered into with individuals to purchase individual mobile homes. Therefore, at the time the petition in bankruptcy was filed, 16 of the 21 mobile homes were in the process of being sold on contract to individual purchasers and 5 mobile homes were held in inventory for sale. Subsequently, a number of the individual purchasers have defaulted and abandoned their interest.

The real property was encumbered by a mortgage in favor of Wells Fargo in the amount of $760,000.[1] Shortly after SGV filed its petition in bankruptcy, Wells Fargo moved for relief from the automatic stay. On August 27, 2009, the Court granted the motion of Wells Fargo. (Case No. 09-11008, Doc. 29). Wells Fargo has not yet foreclosed its mortgage; however, the real property is not the subject of these proceedings. Wells Fargo is named as a party in this Adversary Proceeding; however, it does not claim any interest in either the 21 mobile homes or the 16 contracts to purchase. Carn does not claim an interest in the real property. Thus, there is no dispute between the Trustee and Wells Fargo. Accordingly, the Court finds that Wells Fargo does not have any interest in either the mobile homes or the contracts for sale of the mobile homes.

The facts concerning the purchase of these mobile homes are set out in the Affidavit of John Perry, and may be summarized as follows. (Doc. 22, Ex. 2). The mobile homes and related contracts to purchase were sold pursuant to the "Revised Asset Purchase Agreement," dated

---

[1] The original mortgage was made in favor of LaSalle National Bank. It was later assigned to Capmark and after that to Wells Fargo. For purposes of clarity, the Court will refer to it as the Wells Fargo mortgage.

Case 09-01065    Doc 33    Filed 05/19/10    Entered 05/24/10 14:46:28    Desc Main
                          Document      Page 2 of 9

October 10, 2005. (Doc. 22, Ex. 2). Pursuant to this contract, SGV purchased the 21 mobile homes. Sixteen of these mobile homes had been sold on contracts to individual consumer purchasers and Hossler had retained security interests in them. Moreover, Hossler holds physical possession of the certificates of title both the 16 sold on contract and the 5 that were held in inventory.

Pursuant to the Revised Asset Purchase Agreement, SGV purchased 21 mobile homes and the contractual rights to the 16 sold on contract. It is undisputed that SGV had possession of the mobile homes and that the intention of the parties was for SGV to sell the mobile homes and use those proceeds to pay the indebtedness to Hossler under the Asset Purchase Agreement. The Agreement does not contain a provision purporting to grant a security interest in any of the property to Hossler and a UCC Financing Statement was not filed. However, Paragraph 2.1 of the Contract provides as follows:

> Title to the Sale Assets shall remain in Seller until such time as payment in full for any one of the current contract purchaser or Buyer has made payment in full to Seller for any of the of the Sale Assets.

Hossler contends that this provision, together with the fact that he physically holds possession of the Certificates of Title to the mobile homes gives him a perfected security interest. Moreover, Hossler is listed as the lienholder on the Certificates of Title.

## II. Law

The Court will divide its discussion of the law governing this Adversary Proceeding into four parts. First, the Court will discuss its jurisdiction. Second, the Court will discuss the procedural setting. Third, the Court will discuss the "strong-arm" powers of the Trustee. Fourth, the Court will discuss whether the Trustee's strong-arm powers enable him to avoid any interest Hossler may have in either the mobile homes or the contracts to sell the mobile homes.

### A. Jurisdiction

In this Adversary Proceeding the Chapter 7 Trustee seeks to avoid an unperfected security interest, or in the alternative, a declaration that the Defendants do not have an interest in the subject property. This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E), (K). This is a final order.

### B. Summary Judgment Standard

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P., 7056; see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242-249-50 (1986); Johnson v. Board of Regents of Univ. Of Ga., 263 F.3d 1234, 1243 (11th Cir. 2001); Thomas v. Gulf Coast Credit Servs., Inc., 214 F. Supp.2d 1228, 1231 (M.D. Ala. 2002); FIA Card Services, N.A., v. Flowers (In re Flowers), 2007 WL 2819542 (Bankr. M.D. Ala. Sept. 26, 2007).

Hossler and Carn are in substantial agreement that there are no material facts in dispute. The only exception is whether Hossler has a security interest in the subject property. Paragraph 2.1 of the Asset Purchase Agreement (cited above) is sufficiently ambiguous so as to create a factual issue. Hossler claims that Indiana law permits it offer evidence as to the intention of the parties, citing <u>Gibson County Farm Bureau Coop. Ass'n. v. Greer</u>, 643 N.E.2d 313, 320 (Ind. 1994). For purposes of this motion only, the Court will find that Hossler has a security agreement pursuant to its contract, leaving only the question as to whether that interest is sufficiently perfected, as a matter of law, so as to withstand the Trustee's avoiding powers pursuant to 11 U.S.C. § 544(a). Based upon its review of the record, and having considered the arguments made by the parties in their briefs and at the April 13, 2010 hearing, the Court finds that there are no material facts in dispute.

### C. The Trustee's "Strong-Arm" Powers

Chapter 7 Trustee William Carn contends that this Adversary Proceeding is a straight forward application of the "strong-arm" provisions of the Bankruptcy Code. Section 544 of Title 11 provides as follows:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--
>
>   (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Simply put, as of the date of filing a petition in bankruptcy, the Trustee has the powers of: (1) a judgment lien creditor; (2) judgment creditor with an unsatisfied writ of execution; and (3) a bona fide purchase of real property.

Given the Trustee's Section 544(a) powers, it follows that the Trustee may avoid a security interest granted by one who later files bankruptcy, if the security interest is not perfected. Morris v. Hicks (In re Hicks), 491 F.3d 1136, 1140 (10th Cir. 2007)(Credit Union's failure to record its security interest in a vehicle under Kansas law results in lack of perfection is therefor avoidable); see also, Malloy v. WilServ Credit Union (In re Harper), 516 F.3d 1180 (10th Cir. 2008)(to same effect); Ostrander v. Furman (In re Millivision, Inc., 474 F.3d 4 (1st Cir. 2007); Gordon v. Terrace Mortgage Co., (In re Kim), 571 F.3d 1342 (11th Cir 2009)(Properly recorded mortgage was not avoidable pursuant to Trustee's avoiding powers); Kapila v. Atlantic Mortgage and Investment Corp., (In re Halabi), 184 F.3d 1335 (11th Cir. 1999)(Properly recorded mortgage not subject to Trustee's avoiding powers); Robinson v. Howard Bank (In re Kors, Inc.), 819 F.2d 19 (2nd Cir. 1987)(Bank's failure to file financing statement results in it not being perfected and subject to the Trustee's avoiding powers).

The Trustee in this case contends that there is no grant of a security interest to Hossler and in the alternative, that even if there is, that interest in not perfected. The Trustee contends that Hossler did not perfect its security interest in either the contracts or the underlying mobile homes. As a result, he would avoid any unperfected security interests. Hossler contends that it reserved a security interest the underlying mobile homes pursuant to the terms of the Asset Purchase Agreement.

### D. Hossler Effectively Transferred its Security Interest

Pursuant to the terms of the Asset Purchase Agreement, Hossler transferred its interest in the mobile homes and the contracts to sell the mobile homes to the Debtor. If Hossler wanted a security interest he should have retained a security interest in some or all of what he transferred to the Debtor. Instead, Hossler transferred its rights in the mobile homes and contracts to sell and attempted to secure the Debtor's obligations with a purported reservation of a security interest in the underlying mobile homes. Hossler argues that he "had security agreements with each purchaser, and thereafter had its security interest indicated on the Certificates of Title. Therefore, Hossler had a perfected security interest in the homes prior to the transaction with SGV (the debtor)." (Doc. 24, p. 4)(parenthetical added).

However, as Hossler notes in its own brief, "a security agreement covering a security interest in a manufactured home that is not inventory held for sale may only be perfected by indicating the security interest on the certificate of title or duplicate certificate of title for the manufactured home issued by the Burearu." (Doc. 24, p. 4)(Citing Ind. Code § 9-17-6-7). The mobile homes here were inventory held for sale and the Asset Purchase Agreement establishes as

Case 09-01065    Doc 33    Filed 05/19/10    Entered 05/24/10 14:46:28    Desc Main
Document      Page 7 of 9

much. The proper manner for Hossler to have taken a security interest here was by filing a Financing Statement under the Uniform Commercial Code. Ind. Code § 26-1-9.1-310.

In addition to the problem discussed immediately above, there is a deeper structural problem with what Hossler has attempted to do here. The individual purchaser of the mobile home has a contractual obligation under their contract to purchase the mobile home, either from the Debtor or Hossler. That obligation is properly secured by a notation on the Certificate of Title. In turn, the Debtor had an obligation to Hossler under the Asset Purchase Agreement. This could have only been secured the Debtor's property and not the property owned by the individual purchasers. The Asset Purchase Agreement confuses the two. Just as a hypothetical Mr. Smith may not use the property of Mr. Jones to secure Smith's obligation (absent Jones' express agreement), so it is that Hossler may not secure the Debtor's obligation using the mobile home purchasers property. This confusion of the two is fatal to Hossler's claim that it retained a security interest in that which it does not have.

### III.  CONCLUSION

The Court finds that summary judgment is appropriate as there are not material facts in dispute. The only factual dispute alleged by Defendant Hossler is whether it was intended that he retain a security interest pursuant to the Asset Purchase Agreement. As the Court found, for purposes of this motion that it was the parties intention to create a security interest, the matter is out of dispute. For the reasons set forth above, Hossler did not properly perfect its security interest and therefore, that interest is avoidable by the Trustee's "strong arm" powers pursuant to

11 U.S.C. § 544(a). It then follows that the Trustee shall recover the subject mobile homes, unencumbered by any security interest in favor of Defenant Hossler.

Done this 19th day of May, 2010.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: William W. Nichols, Attorney for Plaintiff
Russell N. Parrish, Attorney for J.R. Hossler